## AMOS *v.* ATLANTA RAILWAY COMPANY.

1. A tortious act which deprives a minor of his ability to render valuable services will give the parent a right of action against the wrong-doer; although such tort may result in the death of the minor, and although at the time of the injury he may be serving, for a violation of a penal law, a term in the chain-gang, which expires in short time and before his majority.

2. A mother has a right of action for such a tort, when the father has abandoned his family and all custody and control of the minor. The allegation in the petition of such abandonment by the father is sufficient as against a general demurrer.

Argued May 19, — Decided July 19, 1898.

Action for damages. Before Judge Reid. City court of Atlanta. January term, 1898.

*Arnold & Arnold*, for plaintiff.
*L. A. Dean* and *King & Spalding*, for defendant.

Lewis, J. Anna Amos brought suit in the city court of Atlanta against the Atlanta Railway Company, for a tort committed upon her minor son on October 18, 1895, alleging in her petition substantially as follows: At the time mentioned the minor son was thirteen years of age, and was engaged at work in the county chain-gang near the city limits, serving there a sentence of six months, which would have expired in 77 days from the date of the injury. The injury resulted in the immediate death of her son, and was caused by the negli-

gence of the defendant company, and without fault on the part of the deceased. The boy's services at the time were of the value of ten dollars ($10) per month; "plaintiff was his only parent (his father having deserted plaintiff long ago), and she received the same [his services], and the boy lived with her before his confinement, and his services were at said time of the value aforesaid, and plaintiff alleges that she was entitled to the same, subject of course to the right of the State to temporarily confine him as a convict." The petition set forth the nature of the services the boy was capable of rendering, and which he did render to plaintiff prior to his incarceration; and further alleged that subsequently to the confinement he would have continued to render such services and contribute to her his earnings. The suit was brought for the lost services of the son, to which the plaintiff would have been entitled up to the boy's majority, had he not been killed. To this petition the defendant demurred upon the grounds: 1st. That there is no cause of action set forth in plaintiff's petition against this defendant. 2d. By the statements in plaintiff's petition it is clearly shown that the son of plaintiff was not, at the time of the alleged injury, rendering or capable of rendering any service to plaintiff. This demurrer was sustained by the court, and the plaintiff excepted.

1. The action in this case is founded upon the common-law right embodied in section 3816 of the Civil Code, which declares: "Every person may recover for torts committed to himself, or his wife, or his child, or his ward, or his servant." The prevailing rule in England is, that if a tort upon a child results in its immediate death, there can be no right of action for lost services. This doctrine as laid down in the case of Osborn *v.* Gillett, Law Rep. 8 Ex. 88, has not only been adhered to in England, but has been adopted by several of the courts in America. It is certainly an anomaly in law to hold, that because death results from an injury the parent can not recover damages for such a wrong, whereas if death had not resulted the right of action would lie. The rule denies any remedy where the injury is more aggravated and the damages sustained greater. On account of its absurdity, this court, as well as

some others in the United States, have entirely ignored it, and have held that, although death results from the tort, an action for lost services can be maintained by the parent. *Shields* v. *Yonge*, 15 *Ga.* 349; *Chick* v. *Southwestern Railroad Co.*, 57 *Ga.* 357; *McDowell* v. *Georgia Railroad*, 60 *Ga.* 320. But it is insisted by the defendant, that inasmuch as the injury to the child occurred at a time when its services could not be commanded by the parent, there can be no recovery; and the decision of this court in the case of *Smith* v. *Hatcher*, 102 *Ga.* 159, is relied on to sustain this position. In that case the suit was for the *homicide* of the child, based upon a new right given by statute to the parent, which did not exist at common law. Under the statute, Civil Code, § 3828, the right is founded upon the dependency of the parent on the child at the time of the injury, and further upon the fact that the child was contributing to the support of the parent. The decision of the court is expressly founded on the use in the statute of the words "is" and "contributes" in the present tense, the court simply ruling that, under the statute as construed, the parent must, at the very time of the injury, be dependent upon the child; and the child at such time must be actually contributing to the parent's support. See opinion of Presiding Justice Lumpkin in that case. The action in the case now under review, however, is not founded upon this statute, but upon principles of the common law; and hence the decision above cited in nowise conflicts with the principle herein announced. Nor is the decision in the case of *Allen* v. *Atlanta Street Railroad Company*, 54 *Ga.* 503, in point. That was an action by a father for damages on account of the homicide of his infant child, and the decision was based upon the idea that the child, on account of its infancy, was, at the time, *incapable* of rendering any service. There is sound reason for that rule. It would be a matter of mere speculation as to when an infant, if ever, would reach an age when it could render service, and even if it should reach that period in its life when it would be old enough to work; the value of such services would depend upon the contingencies of mental and physical development, which could not be foreseen. In order to maintain this action, it is necessary that

the child, at the time of its injury, should be actually capable of rendering service to the plaintiff. The contrary rule seems also to have prevailed in England; but in this country the decisions have been more liberal to the parent, and it is enough that the parent retains the right to claim the services of the child. 17 Am. & Eng. Enc. L. 385–6.

In the case of *Shields* v. *Yonge,* 15 *Ga.* 356, Benning, J., says: "May a father treat his minor son as his servant, and sue for an injury to the son, as for an injury to a servant? If the son be old enough to render service, the father may." To use an illustration presented in the argument of counsel for plaintiff in error: Suppose a child 18 years of age is attending college, and is a positive expense to his parent and renders no service whatever; we apprehend it would not be seriously contended that there could be no recovery by the parent for an injury to him. Or suppose the child should have a spell of illness for several months, and while in that condition should receive an injury, when at the time it was unable to render service on account of sickness; certainly this condition could not operate as a bar to the parent's right of action. Neither would it affect the right of a parent to have redress for such injuries because the child is, at the time, temporarily engaged in the service of another. In 1 Jaggard on Torts, 451–2, the rule is expressed in the following language: "It is not necessary to show that the child rendered valuable services. Pouring tea, or milking cows, has been held to be an act of service. Services may continue, notwithstanding a temporary absence. Even a married daughter living apart from her husband may, in this sense, render services to her father. Proof of actual service of an infant is unnecessary. Right to service is enough. If the child is of age, there must have been loss of service, to entitle the parent to recover. The legal right of the parent at the time to command the services of the child, though she resides and is temporarily employed elsewhere, is sufficient. It rests on his legal obligation to provide for her support and education, and his consequent right to the profits of her labor. This fiction of service as the basis of the right of parent to sue for wrongs done the child is generally recognized in America, al-

though much criticised." In the case of Boyd *v.* Byrd, 8 Blackf. (Ind.) 113, it was held that a father could maintain a suit for the seduction of his unmarried daughter under twenty-one years of age, though she had previously to the seduction left her father's house with his consent, without intending to return, and with his license to appropriate her time and services to her own use. It is true that was a case of seduction; but it will be seen from the opinion delivered by Dewey, J., that the action was founded on the supposed relation of master and servant between the father and daughter, and his right to reclaim the services of such daughter. From authority then, as well as reason, we think that when the parent has not lost dominion or control over the child, but still has the power to claim its services during minority, he can recover for lost services resulting from a tort committed at a time when the child had the ability or capacity to render service. If the contention of the defendant in error be correct, then it matters not how short a time the parent may be temporarily deprived of the services of his child, he can not recover for its injury committed during such time. If, for instance, a boy of sixteen years of age should be for one day imprisoned for a violation of some petty city ordinance, and an injury should be perpetrated upon him during his incarceration, resulting in his immediate death, the parent could not recover, although he would have had the right to reclaim the services of the child within a few hours after the infliction of the injury. We do not know that this exact question has ever before been decided by this court; but it seems to us that to hold otherwise than is herein ruled would be a construction of this common-law right as absurd and unreasonable as the old rule mentioned in the first part of this opinion, from which this court departed; namely, that there can be no recovery for lost services if death results from the tort.

2. It is further insisted by counsel for defendant in error, that the declaration in this case does not sufficiently show that the mother, instead of the father, had a right of action for this injury to her son. Under section 2475 of the Civil Code, it is declared that "if the wife is living separate from the husband, she may sue for such torts, and also torts to her children, and

recover the same to her use." The petition alleges that the father had deserted the mother long ago; that before the injury to her child she had received his services, and would have continued to receive them, had he not been injured. This allegation, under the statute, is certainly sufficient in the absence of a special demurrer. The statute only requires the wife to be living separate from the husband in order to give her the right of action; and we see no other construction that can be reasonably put upon the words of the petition except that the pleader meant this state of separation existed at the time of the commission of the tort and the bringing of the action. *Savannah Ry. Co.* v. *Smith*, 93 *Ga.* 742.

*Judgment reversed. All the Justices concurring.*